In the Matter of the Estate of JEROME C. GREEN, Deceased.

Surrogate's Court, Monroe County, June 17, 1927.

**Executors and administrators — accounting — decedent's real estate in this State was sold to pay transfer tax and administration expenses of decedent's estate in Ohio — administrator seeks to have proceeds applied to payment of sum adjudged in Ohio probate court to be due for legal expenses of conducting litigation in Ohio in interest of estate — sum should be paid, within meaning of Surrogate's Court Act, § 234, subd. 3, permitting payment of reasonable administration expenses by surrogate.**

Decedent's real estate in this State was sold for the purpose of paying New York State transfer tax and certain debts and expenses incurred in administering the estate of the decedent in Ohio. It appears that the administrator, who was also the Ohio administrator of the estate, undertook to recover certain money as assets of the estate, and at the close of the litigation was adjudged by a probate court of Ohio to be entitled to a designated sum covering his expenses for conducting the litigation in that State. The administrator seeks to have the proceeds of the sale in this State applied to the payment of the amount allowed him by the Ohio court. Since, within the meaning of subdivision 3 of section 234 of the Surrogate's Court Act, a proceeding for the payment of the reasonable expenses of administration as allowed by the surrogate is included among the purposes for which a sale of a decedent's property may be had, the proceeds may be applied to pay the administration charges incurred in Ohio.

PROCEEDING for final judicial settlement of account of administrator.

*William T. Plumb,* for the next of kin.

*William H. Tompkins,* for the administrators.

FEELY, S. The question here is whether, on this final judicial settlement, the proceeds of a sale of decedent's real estate in this State, conducted for the purpose of paying the New York transfer tax, and certain debts and expenses incurred in administering the estate of the decedent in Ohio, and for the purpose of distribution among non-resident heirs, can be applied to the payment of a sum adjudged by a Probate Court in Ohio to be due to Harry R. Scobie for legal expenses of conducting a litigation in Ohio wherein he, as Ohio administrator of this decedent, undertook to recover certain money as assets of this estate.

The facts are that Mr. Green died in Ohio September 16, 1924, without a last will; and within three days the claimant, herein, Mr. H. R. Scobie, was appointed administrator by the Probate Court of Cuyahoga county, Ohio. He thereupon began an action, as such administrator, against the Cleveland Trust Company and

Anna Richardson to recover a joint deposit of $5,980.32 standing in the name of decedent and said Richardson, wherein, having succeeded in the trial court and on the first appeal, the administrator's judgment was finally reversed by the Supreme Court and declared no part of the assets of this decedent's estate.

The Probate Court, having adjudged that $2,340 was the reasonable value of Mr. Scobie's legal services in said litigation, and the reasonableness of this amount is not now in dispute, a rehearing was asked for on behalf of all the present objectants, or their predecessors in interest herein, appearing by attorney before said court, and a decision was rendered affirming said allowance of $2,340 out of the assets of said estate; from which no appeal was ever taken.

When said judgment was rendered, the only available assets in Ohio consisted of $769.28 in cash. The Ohio administrator, at the time of his appointment and on until New York letters of administration were issued to him, with Mrs. Desmond, an heir, had been receiving, partly through said heir, later his coadministrator, and partly directly, the rents of the New York real estate of said decedent, which, under his Ohio letters, he had no right to collect. The rents so received amounted to $1,364. The funeral bill was $644; debts, $470; administration expenses in Ohio, $264.59. On these accounts these rentals were applied, as well as to the payment of $379.93 for taxes, water, insurance and repairs on the New York real estate. There remains unpaid to Mr. Scobie certain court costs in Ohio, totalling $162.54.

At the close of the Ohio litigation, the assets, either with or without the New York rentals, were insufficient to pay in full the foregoing charges against the assets in Ohio.

At that stage of this estate, Mr. Scobie and Mrs. Desmond, an heir of decedent, were granted original letters of administration by this court on June 11, 1926, and proceeded to sell decedent's real estate for the purposes aforesaid, the proceeds of which are now before this court for final distribution. The question is whether the judgment of the Probate Court for $2,340 can be paid Mr. Scobie out of this fund.

There can be no question that the present objectants are conclusively estopped from questioning now either the reasonableness of the amount, or its being a proper charge against the assets of this decedent. It is urged that the Ohio administrator and claimant should look for his payment to those who retained him; and that he had no right to receive or apply the rentals as aforesaid; and that the New York real estate is not liable for the legal expenses of the Ohio joint deposit litigation.

This lawsuit was conducted by the Ohio administrator, under proper letters, for the ultimate benefit of all these next of kin, which included the present objectants or their predecessors in interest. It seems to me it was his duty to do so. He was, in no sense, a volunteer. While no personal obligation was entailed on the ultimate beneficiaries, his letters gave him in the circumstances described, *prima facie*, standing to claim the expenses from the assets. It is now claimed that such expense, on failure of assets or personal property anywhere sufficient to pay it, cannot be collected out of the New York real estate; and that the New York statute is limited to the expenses of the immediate proceeding itself.

In 1914 the scope of the former " debt proceeding " was broadened so as to include among the purposes for which a disposition of a decedent's real property might be had, a proceeding " for the payment of the reasonable expense of administration as allowed by the surrogate." (Surrogate's Court Act, § 234, subd. 3.)

This new subdivision seems to have been intended to obviate the ruling in *Matter of Hatch* ([1905] 182 N. Y. 320.) (See, also, *Matter of Liscomb*, 60 Misc. 647 [1908].)

Ground for limiting this allowance to the expenses of the immediate proceeding is sought in the revisers' note to section 234, in which they said: " Expenses of administration are included because the executor or administrator is charged with the duty of making the sale, and he should have his expenses of procuring his appointment, advertising, inventory, etc. There must be a representative and he must administer on the estate in the interest of the creditors, therefore, his expenses must be paid."

Counsel for the New York administrators argues that had the joint deposit been in a Rochester bank, or had the first letters issued here, there could be little doubt that the foregoing subdivision 3 would authorize recourse to this real estate in the circumstances outlined above, for payment of the expenses of the Ohio litigation; and that the fact that the winding up of this decedent's estate was begun in Ohio is immaterial, as is also the fact that the later administration in New York was not, in form, ancillary to the Ohio letters.

It is said in *Matter of Newell* ([1902] 38 Misc. 563, 565): " It was the duty of the executors to seek for assets wherever they could be found. Property of the estate was found in Texas, and they properly endeavored to get it into their possession. While they may not have been compellable to assume the burdens involved by an application for new letters in Texas, they did so, and if any law of Texas or decree of any Texas court requires them to do anything, they may be protected in doing it, but subject to this

MATTER OF GREEN.

limitation the assets recovered by them in Texas belong to the general estate, which they must account for here."

Mr. Heaton says (Heaton Sur. [4th ed.] ¶ 250, p. 1361):

" The surrogate will be required to exercise a sound discretion in fixing and allowing the expenses of administration to be paid from the proceeds of the disposition of the real estate, in order to prevent abuses arising under this new provision. He should consider the reasons for the change in the rule, bearing in mind that the expenses to be allowed are those made necessary *in order that a representative of the estate may be in office, that he may ascertain and come into possession of the personal estate* and may ascertain the debts which are justly due and owing."

" Where administration is taken out in a State in which there are creditors of decedent and real estate owned by him, the fact that he left sufficient personalty in another state to pay all his debts is no objection to an order for the sale of such realty, unless the same person qualified as the representative in both jurisdictions, and distributed the personalty in the jurisdiction where it was situate, without paying the creditors in the other jurisdiction." (24 C. J. p. 554, § 1453.)

In jurisdictions where the right to sell land to pay expenses of administration is questioned, " it is very generally recognized that where a sale is properly made for the payment of debts, the proceeds may be used for payment of the expenses of administration, from which it results that such a sale is valid, even though only enough to pay expenses of administration is realized." (24 C. J. p. 550, § 1444.)

While these generalizations, based on the rulings of States other than New York, do not control the meaning of our statute, they yet suggest reasons why it should be broadly and liberally construed. We have the same parties before this court that were before the Ohio Probate Court. These funds cannot be remitted to Ohio. There were other valid reasons for selling this property besides the payment of the expenses of the Ohio administration. Those expenses are, in a sense, charged on the interest of these distributees and are justly payable therefrom, as they were incurred in the interest and for the benefit of these distributees. Remedies in Ohio having been exhausted, the matter of final distribution is up to this court. The winding up of one person's affairs should be considered as one general undertaking by the law, regardless of the fact that the decedent's property being located in several different jurisdictions, except in so far as location may control procedure, and as an undertaking with the ultimate, substantial object in view of having all the assets gathered, all the debts and charges

paid and the residue divided among those entitled thereto, especially where a single distribution can be had, and the final distribution is to take place in a court which has exclusive jurisdiction over the property to be distributed.   It is my decision, therefore, that these proceeds may lawfully, and should justly, be applied to pay the administration charges incurred in Ohio on behalf of these parties by one of the administrators later appointed as such in this court.

As for the rentals, those received through Mrs. Desmond were rightfully received, though not lawfully, but like the rest were rightly applied in paying taxes, etc., on the property whence they were derived and went for the preservation of the same.   In a sense, all of the rent can be said to have been received under the authority and knowledge of one of these cotenants and as her agent for herself and others similarly interested in the land.   The rentals are now beyond recovery and do not control the main question now in hand.

Let an order be entered accordingly.